**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VICKI J. SWANSON, for/on behalf of**
**J.M.C.S., a minor child,**

                      **Plaintiff,**

                      v.                      **5:06-CV-97**
                                            **(FJS/DRH)**

**MICHAEL J. ASTRUE,**[1] **Commissioner**
**of Social Security,**

                      **Defendant.**
_____

**APPEARANCES**                               **OF COUNSEL**

**LEGAL SERVICES OF CENTRAL**      **CHRISTOPHER CADIN, ESQ.**
**NEW YORK - SYRACUSE**
472 South Salina Street
Suite 300
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **ELLEN E. SOVERN, SAUSA**
**OFFICE OF REGIONAL GENERAL**
**COUNSEL, REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Commissioner Michael J. Astrue is automatically substituted for former Commissioner Jo Anne B. Barnhart as Defendant in this case.

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff[2] filed for SSI benefits when he was six years old based on an alleged learning disability and a speech and language delay. The application was denied; and, following a hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not eligible for SSI payments. The Appeals Council denied a request for review, and Plaintiff filed this action making the following claims: (1) his impairments meet or equal Listing 112.05(D) and/or Listing 112.05(F); (2) the Court should remand this case for development of the record; and (3) his impairments functionally equal the listings with marked limitations in the domains of acquiring and using information and attending and completing tasks. Magistrate Judge DiBianco issued a Report-Recommendation, in which he recommended that the Court affirm the Commissioner's decision and dismiss Plaintiff's complaint. *See* Dkt. No. 12.

Plaintiff filed the following objections to the Report-Recommendation: (1) Magistrate Judge DiBianco improperly concluded that the ALJ's failure to consider IQ scores was harmless error rather than legal error precluding review; (2) Magistrate Judge DiBianco improperly evaluated the evidence to determine that substantial evidence supported the finding that Plaintiff's impairments did not meet or equal Listing 112.05; and (3) Magistrate Judge DiBianco improperly evaluated the evidence to determine that substantial evidence supported the ALJ's finding that Plaintiff's impairments did not functionally equal the listings. *See* Dkt. No. 13. Defendant replied to Plaintiff's objections. *See* Dkt. No. 16.

---

[2] The Court will refer to J.M.C.S. throughout as Plaintiff.

## II. DISCUSSION

**A.     Standard of Review**

In reviewing the Commissioner's final decision, a court reviews that decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. *See Charlton v. Comm'r of Soc. Sec.*, No. 08-CV-142, 2009 WL 838118, *2 (N.D.N.Y. Mar. 26, 2009) (citation omitted). Substantial evidence means relevant evidence a reasonable mind might find sufficient to support a conclusion. *See id.* (citation omitted). "'In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.'" *Id.* (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005)).

Where a party makes specific objections to a magistrate judge's report, district courts engage in *de novo* review of the issues raised in the objections. *See Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). "'If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.'" *Id.* at 306 (quoting *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007)).

**B.     Listing 112.50 and Plaintiff's IQ tests**[3]

The ALJ made the following finding: "Independent intellectual testing performed coincident with the claimant's educational plan has placed the claimant's mental capacity in the borderline level of cognitive ability, well above the minimum requirements in Section 112.05A,

---

[3] The Court will address Plaintiff's first two objections together.

B, C, D, E or F. *See* Administrative Record ("AR") at 13. In discussing Plaintiff's counsel's argument that Plaintiff's verbal IQ score was 69, Magistrate Judge DiBianco noted that "the ALJ states in her decision that the 'standardized tests' placed plaintiff in the 'borderline level of cognitive ability, well above the minimum requirements' in the Listings." *See* Dkt. No. 10 at 19 n.11. He indicated, however, that "[i]t [was] unclear to what the ALJ [was] referring" in this statement. *See id*. After further discussing the IQ tests,[4] Magistrate Judge DiBianco stated that the ALJ might have been referring to the minimum requirements for the Listings. *See id*. Magistrate Judge DiBianco finally stated that, because "the ALJ did not mention the IQ scores themselves," it was unclear whether the ALJ made an error; but, assuming an error, he concluded that the error did not affect the court's decision because substantial evidence supported the ALJ's ultimate conclusion. *See id*.

Plaintiff argues that the law does not allow for this type of harmless error analysis and that the Court may not affirm the Commissioner's decision where there is reasonable doubt that the Commissioner applied the appropriate legal standards. Plaintiff also objects to Magistrate Judge DiBianco's findings that substantial evidence supported the ALJ's determination that Plaintiff's impairments did not meet the requirements of Listings 112.05(D) and (F).

On the other hand, Defendant asserts that whether Plaintiff is able to meet the requirements of sections A through F is irrelevant because Plaintiff cannot meet the introductory language of Listing 112.05. Furthermore, Defendant contends that, although it is a moot point, Magistrate Judge DiBianco incorrectly found that a marked limitation in acquiring and using

---

[4] Magistrate Judge DiBianco did not address the diagnostic requirement found in the introductory paragraph of Listing 112.05, the Mental Retardation listing, but instead discussed only the criteria under 112.05(D) and (F).

information is equivalent to a marked limitation in cognitive/communicative function.

The regulation notes that

> [t]he structure of the listing[] for Mental Retardation (112.05)[5] . . . is different from that of the other mental disorders. Listing 112.05 (Mental Retardation) contains six sets of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph ***and*** any one of the six sets of criteria, we will find that the child's impairments meet the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00 (emphasis added). The introductory paragraph to Listing 112.05 requires "Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." *Id*. at § 112.05. Listing 112.05 then contains six sets of criteria; Plaintiff contends he meets the criteria in 112.05(D)[6] and 112.05(F).[7]

The Court finds that, after reviewing the regulations and listings and the ALJ's decision, it is clear that the ALJ's finding with respect to this listing references the introductory paragraph of 112.05 and that, based on her finding that Plaintiff cannot meet the introductory paragraph's diagnostic description, the ALJ did not make findings under any of the six sets of criteria in 112.05.

To establish the diagnostic requirement in the introductory paragraph of Listing 112.05 of "significantly subaverage general intellectual functioning with deficits in adaptive

---

[5] This is the Listing at issue in this case.

[6] Listing 112.05(D)'s criteria are "[a] valid verbal performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D).

[7] Listing 112.05(F)'s criteria for children Plaintiff's age are "[a limitation] resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(F).

functioning," a claimant may use a verbal, performance, or full scale IQ of 60 through 70 or "'marked' limitation in the area of cognition/communication (under Listing 12.05F, by reference to Listing 112.02B1b[8] or 112.02B2a[9]). *See Pimental v. Barnhart*, No. 04 Civ. 3769, 2006 WL 2013015, *13-*14 (S.D.N.Y. July 19, 2006) (quoting Social Security Ruling, SSR98-1p; Title XVI: Determining Medical Equivalence in Childhood Disability Claims When a Child Has Marked Limitations in Cognition and Speech, 63 Fed. Reg. 15248, 15250 (Mar. 20, 1998)). These requirements are identical to the first criteria under 112.05(D) (IQ score between 60 and 70) and 112.05(F) (cognition/communication limitation under 112.02B1b).

The Court notes that the ALJ did not provide specific reasons for her finding that Plaintiff could not meet the initial diagnosis requirement other than "testing . . . has placed the claimant's mental capacity in the borderline level of cognitive ability, well above the minimum requirements in Section 112.05 . . . ." *See* AR at 13. Additionally, the Court notes that the ALJ analyzed, without rejecting, a verbal IQ score of 69. *See* AR at 16. Such a score is arguably sufficient to meet the initial diagnosis requirement. Although the parties have presented argument concerning the validity and currency of the IQ score, the Court finds that these arguments require remand so that the ALJ can weigh the evidence and make a finding.

Further, the Court notes that the ALJ found that Plaintiff had a marked limitation in

---

[8] Applies to ages 1-3.

[9] "Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02B2a.

acquiring and using information.  *See* AR at 18.  In certain circumstances, such a marked limitation in acquiring and using information is equivalent to a finding of marked impairment of cognitive and communicative function sufficient to meet the introductory diagnosis requirement. *See Pimental*, 2006 WL 2013015, at *11-*12 (finding such equivalence where ALJ considered a low verbal IQ score, other tests, little academic progress, receipt of speech therapy, language delay) (citation omitted).

Accordingly, the Court finds that the ALJ did not provide the necessary reasons for her decision that Plaintiff did not meet Listing 112.05 based on the introductory diagnostic requirements.  Furthermore, the Court finds that there is doubt as to whether the ALJ applied the correct legal standard as to Listing 112.05's introductory diagnostic requirement in light of Plaintiff's IQ test score and the ALJ's finding of marked limitation in acquiring and using information.[10]

"[W]here there is reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  The Court finds that, given the doubt about the legal standards that the ALJ applied, it cannot affirm the ALJ's findings based on substantial evidence.[11]  Accordingly, the Court

---

[10] The Court notes that it expresses no opinion as to the validity or currency of the IQ test or whether the IQ test or the marked finding in acquiring and using information fulfills the introductory diagnostic requirement.

[11] Since the Court has determined that a remand is necessary, the Court will not address Magistrate Judge DiBianco's discussion of functional equivalence and Plaintiff's objections

(continued...)

remands this case to the ALJ for determination of this Listing and development of an Administrative Record with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.

### III.  CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the Commissioner's decision is **VACATED** and the matter is **REMANDED** to the Agency, pursuant to sentence four of 42 U.S.C. § 405(g), for a hearing to reconsider Plaintiff's disability claim; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: May 13, 2009
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[11](...continued)
thereto.